### DUKE v. MORNING JOURNAL ASS'N.

(Circuit Court, S. D. New York. February 3, 1903.)

1. **Libel—Punitive Damages.**

Defendant published a highly sensational article, occupying several columns of its newspaper, prefaced by startling headlines, charging plaintiff with conspiracy to defraud insurance companies by securing policies for the benefit of the conspirators on the lives of aged and decrepit persons, and, when desirable, to hasten the death of insured, and stated that such conspirators were beneficiaries in 100 policies, of which 60 had been canceled by the insurance companies; that 30 of the persons insured had died of disease, 12 by poison, and that the lives of 15 others had been attempted. In its answer defendant alleged that such conspiracy existed in part, and that plaintiff and the other conspirators falsely claimed to be creditors of the individuals insured, etc., and attempted, but failed, to establish such defense. *Held*, that plaintiff was entitled to recover exemplary damages.

2. **Same—Excessiveness.**

A verdict in favor of plaintiff for $36,000 was excessive, and should be reduced to $20,000.

Abram J. Rose, for plaintiff.

Benj. F. Ernstein, for defendant.

WALLACE, Circuit Judge. The motion for a new trial upon the ground that the verdict was excessive has led to a careful reconsideration of the case as it was presented to the jury. The reasons for the conclusion which has been reached may be briefly stated.

It is exceedingly difficult to fix the boundary line between a just award and an excessive one in a case like this. The libelous article published by the defendant was extensively circulated in the state where the plaintiff resided, as well as in other states where he was known, and excited comment and discussion. It was a highly sensational article, occupying two or three columns of the defendant's newspaper, prefaced by startling headlines. In substance it represented that for several years certain prominent business men of Kemper county, Miss., had engaged in an extensive conspiracy to defraud insurance companies, the scheme being to procure policies for the benefit of the conspirators upon the lives of aged and decrepit persons, and, when desirable, to hasten the death of the insured. It gave an estimate of the extent of the operations of the conspirators. This was, in effect, that they were beneficiaries in 100 policies; that 60 of the policies had been canceled by the insurance companies; that 30 of the insured had died of disease; that 12 had died of poison; and that the lives of 15 others had been attempted. It stated that the plaintiff was one of the conspirators; that another, Dr. Lib-

scombe, had been convicted of poisoning one of the insured; that another, Guy Jack, had been indicted and was awaiting trial for the same offense; and that another, Rosenbaum, had been indicted for attempting to poison another of the insured. The defendant, by its answer, alleged facts in partial justification of the publication and in mitigation of damages. It did not allege that the publication was true throughout, but it did allege, in substance, that for many years a conspiracy had existed in Kemper county, the plaintiff being one of the conspirators, to defraud insurance companies. It then proceeded to set out various fraudulent insurances obtained by the several alleged conspirators, the circumstances attending the deaths of some of the insured, and the criminal proceedings against Libscombe, Guy Jack, and Rosenbaum. It alleged that the plaintiff and the other conspirators claimed to be creditors of the individuals insured, when in fact they were not; and that the insurance companies became suspicious because of the deaths of some of the insured, and instituted investigations, and as a result revoked and canceled various policies in which the conspirators were interested. Upon the trial the defendant sought to establish the defense thus set up in its answer, and produced Guy Jack as one of its principal witnesses. The trial occupied three days, and the jury rendered a verdict for the plaintiff of $36,000.

The case was one where the jury was abundantly justified in awarding punitive damages as well as compensatory damages. The circumstances attending the publication of the article authorized them to find that it had been published recklessly, without any attempt to investigate its truth, and with the object of producing a sensational article which would appeal to the credulous and to the tastes of those who enjoy reading narratives of fraud and crime. The plaintiff was a man of respectable business and social standing in his state, and had a wide acquaintance. To what extent his reputation actually suffered by the article is of course largely a matter of conjecture. While it would seem that discriminating readers would regard it as a tissue of exaggeration interwoven with an attenuated thread of fact, many, and perhaps the majority, probably would not analyze it intelligently, and may have inferred that the plaintiff was guilty of the crimes imputed to him. If the jury had awarded compensatory damages only, it cannot be safely said that $10,000 would have been extravagant. Nor can it be safely said, if they had awarded $10,000 by way of exemplary damages, that amount would have been extravagant. What would have been a reasonable award for either element of damages is a question upon which fair-minded and intelligent men would differ widely.

In actions like this, in which damages can be gauged by no fixed standard, but necessarily rest in the sound discretion of the jury, the court ought not to interfere with a verdict for excessiveness unless it is so unreasonable as to indicate that they were influenced by passion, prejudice, partiality, or corruption. The jurors in this case were men of exceptional intelligence, and no doubt is entertained that the verdict was the result of their conscientious convictions.

Nevertheless, it was so large as to induce the belief that their feelings, either of sympathy for the plaintiff or of indignation towards the defendant, carried them too far. The evidence justified them in concluding that the charges in the libel were groundless, and that the publication was a wanton and cruel wrong to the plaintiff. It also probably led them to believe that the defense was not interposed in good faith, but was interposed, not in the expectation of substantiating the averments of the answer, but to besmirch the plaintiff's character by associating him with the frauds of the disreputable witness produced by the defendant, and thus reduce a recovery to a trifling sum. A dispassionate consideration of the evidence leaves the impression that the jury could hardly have failed to become incensed by the character of the defense. In short, the defendant undertook to play with fire, and got, not merely scorched, but burned. Although the defendant justly brought upon itself the severe condemnation of the jury, the conclusion is reached that they visited the offender with too heavy a hand, and that they exceeded the boundaries of a just discretion.

A new trial will be granted unless the plaintiff stipulates to reduce the recovery to $20,000.