LEE S. ESTELLE, APPELLEE, V. DAILY NEWS PUBLISHING
COMPANY ET AL., APPELLANTS.

FILED OCTOBER 2, 1917. No. 20044.

1. **Appeal: INSTRUCTIONS: REVIEW.** Where instructions have been given by the district court upon the request of one of the parties to the suit, he will not afterwards be heard to complain in this court on appeal that the instructions were erroneous.

2. **Libel: QUALIFIED PRIVILEGE.** The law with regard to qualified privilege, and the necessary elements which must be shown in order to uphold a verdict for libel in such a case, laid down in the former opinion, is adhered to.

3. **Instructions examined, and** *held* to be in accordance with the law of the case.

4. **Libel: DAMAGES: EVIDENCE.** The condition and situation in life of one injured by a libel may be shown in evidence, and may be considered by the jury upon the question of the amount of damages.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*Brown, Baxter & Van Dusen, Courtright, Sidner & Lee, Gurley & Fitch, Elmer E. Thomas* and *Arthur G. Wray,* for appellants.

*Mahoney & Kennedy, Frank Dolezal* and *Stout, Rose & Wells, contra.*

LETTON, J.

It is unnecessary to set forth the facts in this case, since they are fully stated in the opinions upon a former appeal, reported in 99 Neb. 397. At that time a judgment in favor of the plaintiff was reversed and the cause remanded for trial. In the majority and concurring opinions the issues to be submitted to the jury upon another trial were fully stated. Many questions discussed in the briefs on this appeal were argued by counsel and disposed of by the opinion and judgment. It is unnecessary, therefore, to restate or reconsider the propositions of law thus settled.

On a second trial the plaintiff recovered a judgment for the sum of $10,000 against each of the defendants, and this appeal results. A large number of assignments of error have been made, but only a few propositions have been argued in the briefs or by counsel orally, and, in accordance with the settled rule of this court, those only will be noticed.

It is argued that the petition does not state a cause of action, that the publication on its face was an innocent campaign appeal, and is not susceptible of a libelous interpretation. This point was determined upon the former appeal, and it was the view of all the judges that the petition stated a cause of action.

It is next said: "Occasion determines the question of privilege. If the occasion exists, actual malice must be shown before the plaintiff can recover"—and in this connection that the cause "was submitted to the jury under instructions which left the jury as much at sea with reference to the rules of law in arriving at a verdict as if no instructions had been given." An examination of the instructions shows that the district court followed the decision of this court with reference to the questions to be submitted to the jury. Not only were such propositions submitted in the abstract, but by making reference to the facts the court directly called attention to the specific questions to be determined, in accordance with the law laid down by this court; and, furthermore, most of the instructions requested by the defendants were given either verbatim or in substance. The material facts on which the liability of the defendants depended were clearly stated.

The complaint is made that the instructions told the jury that the only inquiry for them to make was to determine whether the publication was made maliciously, and whether the readers would understand it to charge plaintiff with corruption or improper motives in his office, and practically informed the jury that they were concerned neither with the truth nor falsity of the article. It is also said that nowhere did the trial judge instruct the jury that it was necessary that they should find actual malice

on the part of the defendant before they could return a verdict for the plaintiff, and that the jury were given to understand that, if the publication charged improper motives and was malicious, yet plaintiff should recover even though the charge was true.   The charge, as a whole, is not vulnerable to these criticisms.   By instruction No. 17, given by the court upon its own motion, the jury were told that if they believed that the matter published was true, and that it was published for good motives and justifiable ends, the plaintiff could not recover.   This statement was repeated in instruction No. 4, requested by the defendant Fellman, and included by the court in its instructions to the jury, and in instruction No. 7, requested by both defendants, and included by the court in its charge to the jury.   In other instructions, included by the court in its charge and given at the request of the Daily News Publishing Company, the jury were told, in substance, that the fitness and qualifications of plaintiff "for the office which he sought and his record as judge were subjects for the freest scrutiny and investigation and comment, either by the publisher of a newspaper or by a voter or other person having an interest in the matter, and that much latitude must be allowed in the publication, for the information of the voters, of charges affecting his fitness for the office, so long as it is done in good faith and without actual malice nor will such publication be ground for damages without proof of actual malice on the part of him who published it, although it may be harsh, unjust and unnecessarily severe, provided said publication does not charge the plaintiff with a crime or with personal or official corruption."   And· again, in instruction No. 10, given at the request of the same defendant, it is said: "In determining whether or not defendant, the Daily News Publishing Company, was ·moved by actual malice in making the publication complained of, the jury should examine," etc.   These instructions embody the principles of law contended for by the defendants and were given at their request.   Whether strictly accurate or not, they are in no position to complain now.   Upon a comparison of the charge given by the

court with the instructions requested by each of the defendants and refused, we find that every instruction requested which states a correct proposition of law was given either verbatim or in substance by the court, so that they have no room for complaint on this score. Much of the argument as to the instructions is in reality an attack upon the soundness of the law laid down in the former opinion. The questions raised were then considered and were determined adversely to appellants.

It is contended that the plaintiff's physical illness was not the direct result of the Fellman letter and was too remote to be considered by the jury in assessing damages. This contention is based upon the fact that the publication was made on the 14th of August, 1913, and no physician was called until about the 8th or 10th of September. It is shown by undisputed testimony that the first knowledge plaintiff had of the publication was by hearing his name mentioned by newsboys on the streets on the afternoon of August 14th; that he bought a paper and read it on his way home; that he suffered a severe nervous shock from the perusal of the letter; that this disturbed and interfered with his sleep, affected his appetite, and lessened his ability to work; and that these conditions progressively increased until early in September, when he was compelled to call a physician. The testimony in this respect was sufficient to justify the submission of this question to the jury.

The court gave the following instruction, on its own motion, with respect to the measure of damages:    "If you find for the plaintiff you will take into account plaintiff's position in life, and who and what the third ward crowd was, as generally understood by the public, as shown by the evidence, and, in the light of these circumstances, and all the other circumstances proved at the trial, consider such damages or injury to his reputation as was caused by the publication, the mental anguish, grief, shame, humiliation or disgrace, and mental suffering, if any, caused by it, and you will allow him for said    injuries, if any, such sum as would fairly compensate him for the

injury and damage sustained. You will allow no damage by way of punishment of the defendants."

The defendant Daily News Publishing Company requested the following instruction, which was given by the court as No. 13: "In determining whether or not the publication complained of caused the plaintiff to become ill, you have a right to consider the length of time lapsing between the publication and the illness, and all other facts and circumstances in evidence touching the publication, its character and scope, the business and occupation of the plaintiff during that time, and, before you can assess any damages sustained by the plaintiff for being ill, you must be convinced that said illness was caused by the publication complained of, and by no other thing."

The latter instruction was excepted to by the Daily News Publishing Company, after the charge was given, and the giving of this instruction is now assigned as error. The rule is that one who procures the giving of an instruction will not afterwards be heard to say it was erroneous. The argument of defendant upon this point is as follows:

"The reason for excepting to the instruction which the defendant had requested was that, the court having refused to strike out plaintiff's testimony in regard to his illness, the defendant supposed, of course, that he intended to submit the question of plaintiff's physical illness as one of the elements of damage; but, much to defendant's astonishment and surprise when the court gave his own instructions, he entirely excluded from the consideration of the jury the physical illness of the plaintiff as one of the elements of damage. * * * Had the defendant been apprised of the theory upon which the court was going to submit the case to the jury, so far as the measure of damages was concerned, it would not have offered instruction No. 13; and, as soon as the theory upon which the court proposed to submit the case to the jury was disclosed by the court's instructions, the defendant promptly excepted to the giving of the instruction which it had very naturally requested in view of the ruling of the court upon the admissibility of the testimony with reference to plaintiff's

physical illness. That defendant should not be bound by this instruction under the circumstances seems too clear for argument. But even under such an instruction the court must be satisfied that the verdict of the jury was in the face of the evidence, so far as it took into consideration the illness of the plaintiff as the direct, immediate and proximate effect of the publication."

The argument is ingenious, but not convincing. No doubt the court would, if requested, have informed counsel of the instruction it was about to give relating to the elements of damages. Besides, considering the charge as a whole, we are satisfied that the evidence sustains the finding that physical illness was the proximate result of the publication.

Defendant Fellman has filed a brief devoted in the main to the contention that the decisions of this court are in conflict as to the so-called "narrow" or "liberal" view of the law of libel, as applying to publications with reference to candidates for public office, and he asks that we follow the "liberal" rule announced in *Atkinson v. Detroit Free Press Co.*, 46 Mich. 341, and *Coleman v. MacLennan*, 78 Kan. 711, 20 L. R. A. n. s. 361.

Instructions No. 15, given on the court's own motion, and defendant's No. 3, heretofore alluded to on the question of malice, when considered together, allow discussion and criticism of the official record of the plaintiff as a candidate for judge of the district court, or of his fitness for the office to which he sought to be elected, and when considered with other instructions only allow recovery where false statements have been made maliciously, and not with good motives, or for justifiable ends. What more liberal rule than this could the defendants in reason ask for? In fact, they did not ask in the tendered instructions for any greater latitude. The rule laid down in the former opinion in this case is in consonance with that of most courts following the so-called liberal rule. In fact in the *MacLennan* case an instruction that, if the jury found "that said article was published with a malicious intent to wilfully wrong and injure plaintiff, then the fact that the

article is a privileged one would constitute no defense to this action," was given.   We are not inclined to adopt a rule which practically takes away all responsibility for the malicious publication of that which is knowingly false, libelous and defamatory.   The views of the court on this question have been clearly set forth in the opinion of Judge Sedgwick on the former appeal and will not be restated.

It is insisted that the verdict is grossly excessive, and a number of instances where verdicts of lesser amounts have been set aside or remittiturs ordered have been cited. The plaintiff in this case was nearly 65 years of age. He had lived in Nebraska since 1872.   In 1884 he was elected district attorney for the judicial district in which he lived. He was appointed by the governor to fill a vacancy as judge of the district court.   Afterwards, he was elected to the same position, and has held that position constantly since January, 1900.   He has been department commander of the Grand Army of the Republic for the district of Nebraska. He was inspector general of the national organization.   Between terms in his court work he has served engagements as a lecturer upon the Chautauqua platform.   Having occupied these public positions, Judge Estelle has been more or less in the public eye in the state of Nebraska and elsewhere for many years. At the time the libel was printed he was occupying judicial office and was a candidate for reelection.   The publication charged him with being associated with "the third ward crowd," which the proof shows was largely composed of thieves, gamblers, pimps, and ballot-box stuffers.   The evidence shows with respect to the "Erdman case" mentioned in the publication that instead of assisting in a "frame-up" to send Erdman to the penitentiary, which is a fair implication from the published statement, Judge Estelle refused to accept a plea of guilty from Erdman when qualified by the statement that he was not able to fight the county.   He appointed counsel for the defense and allowed compulsory process for witnesses.   In a number of other material matters the evidence disproves the imputations and statements of the publication.   The condition and station in life of one injured by a libel may

In re Estate of O'Connor.

be such as greatly to aggravate the injury, and a jury is entitled to take this into account in fixing the amount of recovery. 25 Cyc. 508, and cases cited in note. The case has been twice tried and the former verdict was larger than at this trial. Under all the circumstances we are of opinion that the verdict is not excessive. *Sweeney v. Baker,* 13 W. Va. 158; *Duke v. Morning Journal Ass'n,* 120 Fed. 860; *Minter v. Bradstreet Co.,* 174 Mo. 444; *Crane v. Bennett,* 79 N. Y. Supp. 66; *Young v. Fox,* 49 N. Y. Supp. 634; *Cook v. Globe Printing Co.,* 227 Mo. 471.

We find no error in the record, and the judgment of the district court is

AFFIRMED.

ROSE, J., not sitting.