F. B. STREETER, Respondent, v. THE EMMONS COUNTY FARMERS PRESS, a Corporation, and George W. Lynn, Appellants.

(222 N. W. 455.)

Opinion filed December 17, 1928.

*Lynn & Lynn,* for appellants.
*Chas. Coventry,* for respondent.

GRIMSON, Dist. J. This is a suit for libel. Plaintiff claims that the defendant Emmons County Farmers Press as publisher and George W. Lynn as editor maliciously published in the Emmons County Free Press on July 8th, 1926, an alleged defamatory article concerning him. The parts of said article alleged to be libelous are as follows:

"Why Frisky printed the ballots at a saving to the county of $300 is now coming to light. It will be remembered that when the bids were received last April for the printing of ballots and election supplies, that the board of commissioners rejected all the bids and readvertised over again, and that Frisky published in the record that a commissioner came to him and solicited him to put in a bid at the second letting, and also remember his explosion of gusto about saving the county $300 by underbidding the first bids about that amount. With our limited experience and what information we could get from real printers, we felt that Frisky took the job at a price that would not return any profit and probably a loss. We did not believe that his pretended generosity was due to his love for the dear taxpayer, or that his real motive was to save money for the county, so have been on the lookout for Frisky's nigger in the ballots. It is now developing by unmistakable evidence that this was all a trumped up political scheme plotted as far back as last April through which it was expected to land the Record for official paper by means of a planned deliberate violation of the election laws of the state. A scheme to defeat a just and fair expression of the choice of the whole electorate of the county, and to give a place on the ballots to persons that were not the choice of the majority."

"It is apparent that he printed these ballots without rotating the names intentionally; and for the designed purpose of taking an unfair advantage over the Free Press. We believe he has deliberately printed the Record and his pet candidates in the first position with the intent of thwarting the very purpose of the law that requires the names to be rotated."

"This inclination to mark the first square has long been recognized, and as early as 1905, our legislature passed the law requiring the printer of official ballots to rotate the names, so that in each precinct, no matter how large or small, there should be an equal number of ballots bearing each name at the top of the first position. That is the law to-day, and it is common knowledge that the names are rotated around, and we say that Frisky knew from his experience in other elections that the names should be rotated around, but purposely printed them in this way to gain an unfair advantage over his opponent, the Free Press."

"This act of perfidy on the part of Frisky Buckles, occurring at the primaries, is not so fatal to the Free Press as it would have been had it been pulled off in the fall, and we are glad he exposed this *crookedness* in the primary."

"While the law requires the voted ballots to be kept under lock and key, this matter should be gone into, and the fraud perpetrated should be exposed to the fullest extent, for we believe that by this method parties have been unjustly nominated."

"Stand up, Mr. Buckles, and tell the people of this county how you deliberately, all by yourself, repealed the election laws of the state in so far as they applied to this county."

Defendants admit the publication of article, deny malice, admit that the name "Frisky" refers to the plaintiff and set up by way of defense justification and privileged communication in that they claim the statements complained of are expressions of opinion, comment and criticism reasonable and fairly deducible from the facts stated in the communication. Then at the end of the trial the court allowed the defendants to plead the circumstances in mitigation of the damages.

It appears from the evidence that at the April meeting of the board of county commissoners of Emmons county the commissioners had called for bids for printing the ballots and election supplies at the primary election for Emmons county. They turned down all of the bids and instructed the auditor to call for new bids. Thereafter the chairman of the board in conversation with the state's attorney expressed doubt as to whether any bids would be received on the new call; that the state's attorney then suggested calling the plaintiff Streeter in, which was done; that thereupon some conversation was

had between the plaintiff and chairman of the board of commissioners concerning the plaintiff putting in a bid. ·That the plaintiff expressed doubt as to his ability to furnish the supplies but that he would make inquiries. Later he wrote the chairman that he had been refused election supplies and was not certain he could buy them but that he would put in a bid for printing the ballots anyhow. He did put in such a bid and was awarded the contract for the printing.

On printing the ballots, however, the testimony shows that he failed to rotate the names according to law. Where there were for instance only two candidates instead of having each one on top every alternate ballot printed and distributed to the precincts he printed one-half the ballots with one candidate in the first position and the other half with the other candidate in first position. In most precincts thereof the same candidate would always be on top. Plaintiff testified that was done by mistake and because of his ignorance of the exact provisions of the law that he honestly believed he was complying with the law; that there was no intention to take an unfair advantage of anybody; that he printed the ballots so each candidate was in first position in the same number of ballots as every other for that office. Plaintiff further claims that he or his father had published the ballots some years before and has used this same method believing it to be in compliance with the law. Plaintiff admitted that after the publication of the alleged libelous article he had discovered that he had not printed the ballots in the manner provided by law.

When the returns came in the defendant George W. Lynn from questioning election officials discovered that the names were not rotated in each district and thereupon wrote and published the article which contains the statements complained of. He testified that he published it in good faith believing it to be true and that he based his comments upon the investigation he made as stated in the article. There was also some evidence showing that the plaintiff and defendant George W. Lynn were, to say the least, not on very friendly terms.

The court charged, among other things, that the article published was libelous on its face; that the defendant had failed in its attempt at justification; that in so far as it reflected on the character and reputation of Mr. Streeter the evidence failed to show its truth; that the defendants had a right to state the facts with regard to mistake or a

failure to comply with the law in regard to printing of the ballots. Such were facts in which the public had an interest and the publication thereof would not be libelous but privileged. That when, however, the defendant went further than the publication of the true facts as established in the evidence and drew deductions and conclusions and inferences from their statements of the facts which were not true and which tended to defame Mr. Streeter then the publication of that part of the article was not privileged and the court went on to say that such comments were libelous on their face and being not proven to be true must be taken to be false. Then the court instructed upon mitigation, malice, punitive damages and submitted to the jury only the question of the amount of plaintiff's damages.

The defendants and appellants filed five specifications of error to the court's charge and those were the only errors argued in this court.

In the first specification of error defendant and appellant claims the court erred in giving instructions applicable to matters libelous per se and in not instructing on the law governing reasonable comments and criticism. In defendant's second specification appellants claim the court erred in that part of its charge where it directed the jury that the comments were libelous on their face and not proven. The third specification relates to that part of the charge where the court says that when the defendants go further than the publication of true facts and draw deductions and conclusions and inferences not true and which tend to defame the plaintiff then the publication of that part of the article is not privileged and says that the evidence fails to show that the deductions and inferences which make charges of crookedness in business and fraud are true. As these three specifications refer much to the same matter they will be here discussed together.

Fair and reasonable comment and criticism made in good faith reasonably deducible from facts stated proven or admitted is immune from civil liability. Wilcox v. Moore, 69 Minn. 49, 71 N. W. 917; Van Lonkhuyzen v. Daily News Co. 203 Mich. 570, 170 N. W. 93.

Newspapers, however, have no greater privilege in that respect than private individuals. 17 R. C. L. 349. Fair, honest and reasonable criticism of matters in which the public is concerned is good for the body politic. Lydiard v. Wingate, 131 Minn. 355, 155 N. W. 212.

When, however, such criticism goes beyond that and especially with regard to private individuals it would seem to give way to license rather than liberty of the press. Williams v. Black, 24 S. D. 501, 124 N. W. 728. Every citizen has a constitutional right to the enjoyment of his character as well as to the ownership of his property and this right is as sacred as the liberty of the press.

As the question most seriously argued in this case is whether the alleged libelous statements are fair and reasonable comments and criticism, it is well to examine what the authorities have held constitutes fair and reasonable comment and criticism and what the difference is between that and defamation.

In Rex v. Burdett, 4 Barn. & Ald. 95, 106 Eng. Reprint, 873, it was said:

"The liberty of the press cannot impute criminal conduct to others, without violating the right of the character, and that right can only be attacked in a court of justice, where the party attacked has a fair opportunity of defending himself. *Where vituperation begins, the liberty of the press ends.*"

Odgers on Libel & Slander, page 35, says:

"Every one of the public is entitled to pass an opinion on everything which in any way invited public attention. Those of the public whose opinion on such matters is best worth having are called critics. From their character, ability, or experience, they can judge with precision (which is the true meaning of the word 'criticize') and their opinion, therefore, is entitled to respect. Their criticism may be commendatory, but it is perhaps, more generally unfavorable. Still, so long as it continues to be criticism at all, it is not defamatory. Where defamation commences, true criticism ends. True criticism differs from defamation in the following particulars: 1. Criticism deals only with such things as invite public attention or call for public comment; 2. Criticism never attacks the individual, but only his work. Such work may be either the policy of a government, the action of a member of parliament, a public entertainment, a book published, or a picture exhibited. In every case the attack is on a man's acts, or on some thing, and not upon the man himself. A true critic never indulges in personalities; 3. True criticism never imputes or insinuates dishonorable motives (unless justice absolutely requires it, and then only on

the clearest proofs) ; 4. The critic never takes advantage of the occasion to gratify private malice, or to attain any other object beyond the fair discussion of matters of public interest, and the judicious guidance of the public taste."

The same author quotes with approval the language of Huddleston, B., in Whistler .v. Ruskin, 'London Times,' Nov. 27, 1878, where he says:

"A critic must confine himself to criticism, and not make it the veil for personal censure, nor allow himself to run into reckless and unfair attacks merely for the love of exercising his power of denunciation."

And the author adds, page 38:

"But all comments must be discussed temperately. *Wicked and corrupt motives should never be wantonly assigned.* And it will be no defense that the writer, at the time he wrote, honestly believed· in the truth of the charges he was making, if such charges be made· recklessly, unreasonably and without any foundation in fact. Some people are very credulous, especially in politics; and can readily believe any evil of their opponents. There must therefore be some foundation in fact for the charges made; the writer must bring to his task some degree of moderation and judgment."

This supreme court in the case of McCue v. Equity Co-op. Pub. Co. 39 N. D. 190, 167 N. W. 225, says:

"The right to 'freely write, speak and publish his opinions,' which is guaranteed to every man by our Constitution, does not mean unrestrained license to publish false and libelous matter. For while the Constitution makes it permissive to publish the truth with good motives and for justifiable ends, it also recognizes the responsibility for injury to others occasioned by one who abuses the privileges of liberty of speech and of the press."

Bearing in mind the distinctions laid down between fair comment and criticism and defamation, was the court justified in holding the statement set out as libelous on its face? Take for example, such statements as this:

"It is now developing by unmistakable evidence that this was a trumped up political scheme plotted as far back as last April, through

which it was expected to land the Record for official paper, by means of a planned, deliberate violation of the election laws of the state."

"It is apparent that he printed these ballots without rotating the names intentionally and for the designed purpose of taking an unfair advantage over the Free Press."

"This act of perfidy on the part of Frisky Buckles, occurring at the primaries is not so fatal to the Free Press as had it been pulled off in the Fall, and we are glad he exposed this crookedness in the primary."

These statements are statements of fact rather than criticism or at least given as a statement of fact rather than opinion. They charge a deliberate scheme to violate the laws of the state. They charge fraud and unfair advantage. They deliberately charge an act of perfidy. Webster defines perfidy as "faithlessness, treachery, violation of a promise or vow or a trust reposed." All these and many more in the article are positive statements rather than comment and criticism.

The appellant argues strenuously that the court should have submitted to the jury whether or not the alleged libelous statements were reasonable comment and criticism. The question of whether or not a publication is within or without the scope of comment and criticism is always a question of law. 37 C. J. 108; Parson v. Age-Herald Pub. Co. 181 Ala. 439, 61 So. 345. The question of whether the publication has exceeded the limits of fair criticism or comment may be a question of law or a fact. 37 Cyc. 108 and cases cited. When the meaning of the words used in the statement is such that to all reasonable men there can only be one inference and that inference defamatory, then there is nothing to submit to a jury. It becomes a question purely of law and is properly decided by the court.

As heretofore pointed out the many statements in the alleged libelous article go further than comment and criticism. They are alleged as facts. They accuse the plaintiff of violation of the law, fraud and perfidy. They certainly expose him to hatred, contempt, ridicule and obliquy, therefore a tendency to injure him in his business. Comp. Laws 1913, § 4352. There was no error therefore for the court to find that the article went beyond fair comment and criticism and was libelous per se. Putnam v. Browne, 162 Wis. 524, 155 N. W. 910, Ann. Cas. 1918C, 1085; Eikoff v. Gilbert, 124 Mich. 353, 51 L.R.A. 451, 83 N. W. 110; Mertens v. Bee Pub. Co. 5 Neb.

(Unof.) 592, 99 N. W. 847; Langer v. Courier-News, 46 N. D. 430, 179 N. W. 909.

The fourth specification of error argued by the appellant is that the court erred in charging that the plea of justification had failed. The court, both during the trial and in its charge, held that said plea had failed because the justification was not as broad as the charge made. See Lauder v. Jones, 13 N. D. 554, 101 N. W. 907; 37 C. J. 88. Fair consideration of the evidence shows that the court held correctly on that matter. The justification attempted was not as broad as the charge made and the circumstances offered under that plea were correctly left by the court to be considered in mitigation of damages.

The next assignment of error is upon the following from the court's charge:

"You cannot consider as basis of any action on your part in the rendition of the verdict any of the other portions of the article in the newspaper except those stated in the complaint." Following that, however, in the charge the court says:

"I mean by that that the plaintiff has chosen such parts of the article as he says are libelous and has not chosen any of the other parts. Those other parts may be competent for you to consider as bearing upon the relationship between those two parties, the plaintiff and defendants, and as bearing upon the question whether the publication was made maliciously or not as I will define that term to you."

And the court submitted the whole article to the jury and also the parts claimed defamatory in the complaint: "So you may have that to compare it with the article in the newspaper, exhibit one, which was introduced in evidence, for that article contains a good many other things not charged in the complaint to be libelous."

This last quotation immediately precedes the one claimed as error. This court has repeatedly held that a charge must be considered as a whole and when this charge is read as a whole it is clear that the whole article was submitted to the jury for consideration and they were merely instructed that they could not base libel upon any part of it except those selected by the plaintiff. This instruction is clear to the ordinary man and without prejudice.

Specification number six is against that part of the charge which

admits to the jury one verdict in favor of the plaintiff. Appellants admit if the other instructions were held correct then this is not error. When the article was found to be libelous per se and not fair comment and criticism and no justification proven there was only one verdict possible, that for the plaintiff.

These are the only errors assigned in the argument before this court. Finding no prejudicial error the judgment and order appealed from will be affirmed.

NUESSLE, Ch. J., and BIRDZELL, BURKE, and BURR, JJ., concur.

CHRISTIANSON, J., did not participate; GRIMSON, Dist. J., of the Second Judicial District, sitting in his stead.