**Edward D. VANOVER, Plaintiff and Appellant,**

v.

**KANSAS CITY LIFE INSURANCE COMPANY, a corporation, and James B. Slusher, Defendants and Appellees.**

Civ. No. 880213.

Supreme Court of North Dakota.

March 27, 1989.

Vinje Law Firm, Bismarck, for plaintiff and appellant; argued by Ralph A. Vinje.

Pearce & Durick, Bismarck, for defendants and appellees; argued by Lawrence A. Dopson.

MESCHKE, Justice.

Edward D. Vanover appealed from a summary judgment dismissing his defamation suit against Kansas City Life Insurance Company and James B. Slusher, its associate general counsel. We reverse and remand.

Vanover was a general agent for Kansas and for Armour Life Insurance Company, a subsidiary of Kansas, until terminated in 1983. This suit is over statements allegedly made by Kansas and Slusher about the reason for Vanover's termination. We consider the effect of two prior proceedings between Vanover, Armour and Kansas.

In 1984, Vanover started a proceeding against Armour with the Commissioner of Insurance to impose penalties and to suspend or revoke its certificate of authority to do business in this state. Vanover

claimed, among other things, that Armour agents had falsely stated to others, in violation of § 26.1–04–03(3), N.D.C.C.[1], that Vanover was terminated for lack of production. In his findings, the Commissioner stated: "Lack of production was a reason for termination of the Complainant by the Respondent." In his conclusions, the Commissioner stated:

"The respondent company determined that one of the reasons for termination of the complainant as its general agent in North Dakota was lack of production. The respondent company's officers informed their employees and agents that this was the reason for termination and it instructed their agents and employees to respond to any inquiries with that phrase. The evidence is insufficient to support a conclusion that the statement was false since there was no increase in production by the complainant if you compare January to August of 1982 with the same period in 1983. This was a part of the basis for the respondent company's position...."

In 1985, Vanover sued Kansas for breach of contract. The trial court determined that Vanover's contract was terminable at will and that "[p]oor performance of the agency in 1982 and 1983 was a legally sufficient cause for termination of the general agent's contract, in the event cause was required." Vanover's complaint was dismissed and Vanover did not appeal.

In 1987, Vanover sued Kansas and Slusher for defamation in this action. He alleged that they had made unprivileged statements by letter and telephone to others in April 1986, saying falsely that Vanover "was terminated from Armour Life and Kansas City Life for cause." Kansas and Slusher moved for summary judgment, contending that "the underlying issues have been previously determined such that [Vanover] is precluded from relitigating them." Vanover resisted the motion, contending that there was a disputed issue about whether he had been, in fact, "fired for cause." The trial court ruled that the prior lawsuit and proceeding before the Commissioner of Insurance had already decided that he had been "fired for cause." The trial court granted summary judgment to Kansas and Slusher.

Vanover appealed, contending that the finding of cause in the first lawsuit was dictum, that the Commissioner of Insurance did not find that Vanover had been terminated for lack of production, and that the doctrine of res judicata does not apply to decisions of the Commissioner.

■ At the outset Kansas and Slusher moved to strike two affidavits in the appellate appendix submitted by Vanover. Rule 10(a), N.D.R.App.P., specifies the record on appeal: "The original papers and exhibits filed in the trial court, three copies of the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." The affidavits were not filed in the trial court. Generally, we must decide an appeal on the evidence submitted to the trial court. *City of Minot v. Freelander*, 368 N.W.2d 514 (N.D.1985). "Important policy considerations on finality of judgments require that new or additional evidence not be considered on appeal." *Id.*, at 518. *See also Svihla v. Svihla*, 126 N.W. 2d 135 (N.D.1964). Therefore, we strike the affidavits.

■ Vanover contended that because the judgment in the breach-of-contract action against Kansas determined that Vanover's contract was terminable at will, the further conclusion in that case, that "[p]oor performance of the agency in 1982 and 1983 was a legally sufficient cause for termi-

---

1. *"26.1–04–03. Unfair methods of competition and unfair or deceptive acts or practices defined.* The following are unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

\* \* \* \* \* \*

"3. Defamation. Making, publishing, disseminating, or circulating, directly or indirectly, or aiding, abetting, or encouraging the making, publishing, disseminating, or circulating of any oral or written statement or any pamphlet, circular, article, or literature which is false, or maliciously critical of or derogatory to the financial condition of any person, and which is calculated to injure any person engaged in the business of insurance."

nation of the general agent's contract, in the event cause was required," was dictum, and so could not be res judicata. In our view, the first judgment stated alternative grounds, either of which was sufficient to support dismissal of Vanover's suit for breach of contract. However, that does not preclude Vanover from litigating the reason for his termination nor from disputing the effect of the statements that he was terminated for cause. *See* Restatement (2d) of Judgments, § 27 (1982) and *comment i* thereto:

"§ 27. Issue Preclusion—General Rule "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

\*　　\*　　\*　　\*　　\*　　\*

"*i. Alternative determinations by court of first instance.* If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone. See Illustration 14. Cf. § 20, Comment *e.*"

*Compare* comment o, *id.*, dealing with the effect of an appellate decision based on alternative determinations.

Thus, the alternative determination in the first judgment that "[p]oor performance of the agency in 1982 and 1983 was a legally sufficient cause. for termination" does not preclude Vanover from litigating the reason for his termination or whether he was defamed by statements that he was terminated for cause.

Relying on our statement in *Peacock v. Sundre Township,* 372 N.W.2d 877, 878 (N.D.1985), that "[r]es judicata means that a valid, existing final judgment from a court of competent jurisdiction is conclusive," Vanover contended that the Commissioner's decision did not bind the trial court because the Commissioner was not a "court of competent jurisdiction." Vanover also contended that the Commissioner did not find that there was a lack of production or that he was terminated for cause.

■ Although an administrative agency is not a court, an administrative agency decision may be res judicata. *See Amerada Hess Corp. v. Furlong Oil & Minerals Co.,* 348 N.W.2d 913 (N.D.1984). In that case, the Industrial Commission authorized Furlong to enter a nonproducing well drilled by Amerada and Amerada sued to enjoin Furlong. This court stated that "the trial court would have been justified in treating [the Industrial Commission's] Order No. 2970 as res judicata, and dismissing Amerada's suit for an injunction as an improper collateral attack on the order." *Id.,* at 916. *See also United States v. Karlen,* 645 F.2d 635, 638 (8th Cir.1981) (doctrines of res judicata and collateral estoppel "apply to appropriate administrative actions").

■ Reading all of the Commissioner's findings and conclusions together, however, we conclude that it is far from clear that the Commissioner actually determined that Armour terminated Vanover because of a lack of production, as distinguished from reciting assertions made by Armour. We, therefore, do not deem the Commissioner's decision to be conclusive on the reason for Vanover's termination by Armour.

We conclude that neither the judgment in Vanover's breach-of-contract action, nor the Commissioner's decision, precludes Vanover from litigating the issues of the reason for his termination or of the defamatory nature of statements about his termination. The trial court, therefore, erred in granting the motion for summary judgment on the ground that these issues had already been litigated and decided. The summary judgment is reversed.

Because the trial court ruled that the issues had already been litigated and decided, the court did not address the issue of whether or not the allegedly false statements might have been defamatory.

In *Moritz v. Medical Arts Clinic, P.C.*, 315 N.W.2d 458, 460 (N.D.1982), this court said:

"... There is no question that summary judgment is not warranted if the letter is capable of two meanings—one defamatory and the other innocent. *McCue v. Equity Coop Pub. Co. of Fargo*, [39 N.D. 190, 167 N.W. 225 (1918)] *supra*.

"If an innuendo is involved, the question of whether the alleged defamation is fairly warranted by the writing is one of law for the court to decide. Upon finding a reasonable possibility that the ascribed libelous meaning can be given to the material alleged to be defamatory, it is for the jury to determine if the libelous meaning was intended or conveyed. *Ellsworth v. Martindale–Hubbell Law Dictionary*, 69 N.D. 610, 289 N.W. 101 (1940)."

Thus, on remand, the trial court must determine if the statements that Vanover was "terminated for cause" are reasonably susceptible of a defamatory construction. "That is a question which should be determined by the district court in the first instance after proper hearing." *Dennis v. Dennis*, 366 N.W.2d 474, 477 (N.D.1985).

Statements, that an employee was discharged for cause, have met with varying results in defamation actions. In *Terry v. Hubbell*, 22 Conn.Sup. 248, 167 A.2d 919, 923 (1960), where an employee had mistakenly indicated on a payroll form that the plaintiff had been "discharged for cause" and there was no malice, the court said:

"... Taken in their 'natural and ordinary meaning,' the words 'discharged for cause' mean no more than that the plaintiff was released or dismissed from an office or employment for some undisclosed circumstance which operated to produce that effect. It is concluded that under the circumstances the marking of the box 'discharged for cause' did not constitute a libel per se."

In *Carney v. Memorial Hosp. & Nursing Home*, 64 N.Y.2d 770, 485 N.Y.S.2d 984, 985, 475 N.E.2d 451, 453 (1985), the court held that the plaintiff's allegation "based on publication of the statement that plaintiff was discharged 'for cause' ... states a valid cause of action in libel." The court also said:

"... And to the extent that defendants argue that the statement is not defamatory because it means only that the hospital administrator had a 'reason,' which may or may not be valid, for dismissing plaintiff, their argument must be tested against the understanding of the average reader (citations omitted).

"... [T]he statement that plaintiff was terminated 'for cause' is not clearly susceptible to only one interpretation.... It cannot be said as a matter of law that the average reader of the statement that plaintiff was discharged 'for cause' would not interpret it as meaning that plaintiff had actually been derelict in his professional duties. Accordingly, plaintiff is entitled to a jury determination of the issue (*see*, PJI 3:25 and comment)."

*See also Pattison v. Gulf Bag Co.*, 116 La. 963, 41 So. 224, 225 (1906), where a company manager had said of a discharged employee:

"... It was not a trivial offense.... It was a good cause, which she knows and which I know, and which I could tell you if necessary, but which I would prefer not to. Suffice it to say, however, that the cause was such that she could not be retained in this factory."

The court said that "[t]he insinuation contained a veiled charge of some wrongdoing, the nature of which was left to the imagination" and held that the language was defamatory. *Id.*, 41 So. at 225.

The summary judgment is reversed and the matter remanded for further proceedings.

LEVINE and GIERKE, JJ., concur.

VANDE WALLE, Justice, dissenting.

In *Perdue v. Knudson*, 179 N.W.2d 416, 421 (N.D.1970), we said:

"Courts will not permit a litigant to try a part of his case and then, if he is disappointed with the outcome of the action, to have another day in court simply by alleging new claims or making a new

demand for relief, when he could have made such demand in the prior action. In such case, the judgment in the first action is conclusive between the same parties as to all matters tried in that action or which, under the rules, might have been put in issue in the action previously tried, in which judgment was entered and from which judgment no appeal was taken."

See also *Wolf v. Anderson,* 422 N.W.2d 400 (N.D.1988).

The majority relies upon *Restatement (2d),* Judgments § 27 (1982), *Comment i,* for the proposition that if a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone. The discussion of this part of the *Restatement* recognizes that there are valid arguments that the judgment should be conclusive with respect to both issues, i.e., the matter has presumably been fully litigated and decided; an appeal can be taken; and a party who would otherwise urge several matters in support of a particular result may be deterred from doing so if a judgment resting on alternative determinations does not effectively preclude relitigation of particular issues. Despite these observations the rule is justified by the *Restatement* Comment:

"First, a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta. Second, and of critical importance, the losing party, although entitled to appeal from both determinations, might be dissuaded from doing so because of the likelihood that at least one of them would be upheld and the other not even reached. If he were to appeal solely for the purpose. of avoiding the application of the rule of issue preclusion, then the rule might be responsible for increasing the burdens of litigation on the parties and the courts rather than lightening those burdens." *Restatement (2d),* Judgments § 27 (1982) at 259.

The discussion further reflects the uneasiness of the rule but rationalized as follows:

"There may be causes where, despite these considerations, the balance tips in favor of preclusion because of the fullness with which the issue was litigated and decided in the first action. But since the question of preclusion will almost always be a close one if each case is to rest on its own particular facts, it is in the interest of predictability and simplicity for the result of nonpreclusion to be uniform." *Id.*

I would not so slavishly adhere to the *Restatement.* The first of its announced reasons for the rule is condescending to the trial courts, and the second is, at best, speculative. Under the circumstances in this case, where the facts underlying the defamation claim were considered and decided unfavorably to Vanover not once but twice, I would not apply the *Restatement* and the argumentative and superficial rationale which underlies it.

I would affirm the judgment.

ERICKSTAD, C.J., concurs.