2002 ND 32

Lee BERTSCH and Bertsch Construction, Inc., Plaintiffs, Appellants and Cross–Appellees,

v.

George "Skip" DUEMELAND and Duemeland's Realty, LLC, Defendants, Appellees and Cross–Appellants.

No. 20010151.

Supreme Court of North Dakota.

Feb. 20, 2002.

James J. Coles, Coles Law Firm, PC, Bismarck, ND, for appellants.

Randall J. Bakke (argued), and Michael J. Hagburg (on brief), Smith Bakke Hovland Oppegard and James S. Hill (on brief), Zuger Kirmis & Smith, Bismarck, ND, for appellees.

SANDSTROM, Justice.

[¶1] Lee Bertsch and Bertsch Construction, Inc., appealed a summary judgment dismissing their action against George Duemeland and Duemeland Realty, LLC, for defamation, tortious interference with a business relationship, and misappropriation of trade secrets. Duemeland cross-appealed from the denial of attorney fees. We conclude Bertsch raised genuine issues of material fact about his defamation claim, but he failed to raise genuine issues of material fact about his other claims. We further conclude the trial court did not abuse its discretion in denying Duemeland attorney fees. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

I

[¶2] In 1997, Hollywood Entertainment retained Ron Nelson, a Sioux Falls, South Dakota, real estate broker, to locate and recommend sites for Hollywood Video stores in North Dakota. According to Nelson, Hollywood Entertainment reviewed recommended sites for a store, and if a site "fe[lt] right," Hollywood Entertainment provided the owner with a letter of intent. Hollywood Entertainment then conducted a supply and demand study to determine whether the potential site met threshold standards, and if the site passed that study, Hollywood Entertainment conducted a site pack review, which consisted of an exhaustive and detailed study of the site. According to Nelson, a potential site must pass the site pack review before Hollywood Entertainment leases the site.

[¶3] In May 1997, Nelson visited Bismarck to locate potential sites for a Hollywood Video store, and he contacted several Bismarck real estate agents, including Bertsch and Duemeland. Nelson had met Bertsch while Nelson was looking for a potential site for a Hollywood Video store in Minot. Bertsch was seeking financing for an option to purchase property known as the Christopher Building in Bismarck, and he began working with Nelson to lease space in the Christopher Building to Hollywood Entertainment. According to Bertsch, Hollywood Entertainment was a nationally rated credit tenant, and a lease with a credit tenant like Hollywood Entertainment could form the basis for develop-

ment financing. In October 1997, Nelson, as a leasing agent for Hollywood Entertainment, and Bertsch executed a letter of intent for a site in the Christopher Building. The letter of intent was on a form generated by Hollywood Entertainment and listed several proposed terms for Bertsch's lease of part of the Christopher Building to Hollywood Entertainment. The letter of intent stated it was not intended to be a contract.

[¶ 4] According to Duemeland, Bertsch's option to purchase the Christopher Building expired on November 15, 1997, and Bertsch had not secured financing to purchase the building by that date. Duemeland sent Nelson a November 28, 1997, letter making a "back up offer" on the Christopher Building and saying "Bertch [sic] has the reputation of not closing, unless he gets assisted Funds. This is a large project for him, and would not unless you were to proceed, be able to pull this project off. There would always be the possibility that he may have financial backing." Duemeland later suggested he could develop the Christopher Building if Bertsch was unable to get financing. In December 1997, Nelson provided Duemeland with a copy of the letter of intent provided by Hollywood Entertainment to Bertsch. Bertsch ultimately purchased the Christopher Building in December 1997, but according to him, all further negotiations with Nelson ceased after Duemeland's contacts with Nelson. According to Nelson, Hollywood Entertainment did not lease the site in the Christopher Building because the property did not pass Hollywood Entertainment's supply and demand study and Hollywood Entertainment never conducted a site pack review for the property.

[¶ 5] In 1999, Hollywood Entertainment again considered the Christopher Building as a potential site for a Holly-

wood Video store in Bismarck. According to Nelson, he did not recommend the Christopher Building to Hollywood Entertainment. According to Jay Spooner, an employee at Duemeland Realty, Nelson expressed concern about Bertsch's financial problems. Hollywood Entertainment nevertheless provided Bertsch with another letter of intent for the Christopher Building, but when another site became available, Hollywood Entertainment ultimately located a Hollywood Video store at the other site.

[¶ 6] Bertsch sued Duemeland, alleging Duemeland's 1997 contacts with Nelson constituted defamation, tortious interference with a business relationship, and misappropriation of trade secrets. Duemeland moved for summary judgment. Bertsch moved for a continuance for additional discovery under N.D.R.Civ.P. 56(f), claiming he needed additional time to discover documents from Hollywood Entertainment's corporate office and e-mail messages between Duemeland and Nelson. Bertsch sought to compel discovery of information on computers acquired by Duemeland in August 1998 and September 2000, claiming the hard drives for those computers contained possible e-mail messages between Duemeland and Nelson that may have been transferred from the hard drives of other computers used by Duemeland in 1997. The trial court denied Bertsch's motion for a continuance, but granted him thirty days to respond to Duemeland's motion for summary judgment. The court thereafter denied Bertsch's motion to compel discovery and granted Duemeland summary judgment, concluding (1) Duemeland's statements regarding Bertsch's reputation for not closing were true and constituted a defense to the defamation claim; (2) Bertsch did not establish he was damaged by Duemeland's conduct so as to permit recovery for tortious interference with a business relation-

ship; and (3) Duemeland did not use improper means to obtain trade secrets. The court concluded Bertsch's action was not frivolous and denied Duemeland's request for attorney fees. Bertsch appealed, and Duemeland cross-appealed.

[¶ 7] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01. The appeal and cross-appeal are timely under N.D.R.App.P. 4(a).

## II

[¶ 8] We review this appeal in the posture of summary judgment under N.D.R.Civ.P. 56, which

is a method for promptly and expeditiously disposing of a controversy without trial if either party is entitled to a judgment as a matter of law and if no dispute exists as to either the material facts, or the inferences to be drawn from undisputed facts, or if resolving factual issues would not alter the results. A district court deciding a motion for summary judgment is required to view the evidence in the light most favorable to the resisting party. Although the party seeking summary judgment bears the initial burden of showing there is no genuine issue of material fact, the party opposing the motion may not simply rely upon the pleadings or unsupported allegations. Rather, the resisting party must present competent admissible evidence by affidavit or other comparable means raising an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact. Whether the district court properly

granted summary judgment is a question of law subject to de novo review. *Rogstad v. Dakota Gasification Co.*, 2001 ND 54, ¶ 10, 623 N.W.2d 382 (citations omitted).

[¶ 9] Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of their claim and on which they will bear the burden of proof at trial. *Black v. Abex Corp.*, 1999 ND 236, ¶ 23, 603 N.W.2d 182.

### A

[¶ 10] Bertsch argues the trial court erred in granting summary judgment dismissal of his defamation claim.

[¶ 11] Under N.D. Const. art. I, § 4, every person "may freely write, speak and publish his opinions on all subjects, being responsible for the abuse of that privilege." *See, e.g., Moritz v. Medical Arts Clinic, P.C.*, 315 N.W.2d 458, 459–60 (N.D.1982). Every person has the right to be protected from defamation, which is classified as either libel or slander under N.D.C.C. § 14–02–02. *See Jose v. Norwest Bank*, 1999 ND 175, ¶ 23, 599 N.W.2d 293. Libel is "a false and unprivileged publication by writing ... which has a tendency to injure the person in the person's occupation." N.D.C.C. § 14–02–03. Slander is "a false and unprivileged publication other than libel, which ... [t]ends directly to injure the person in respect to the person's office, profession, trade, or business, ... by imputing to the person general disqualifications in those respects which the office or other occupation peculiarly requires." N.D.C.C. § 14–02–04(3). A publication must be false to be defamatory. *Jose* at ¶ 24; *Meier v. Novak*, 338 N.W.2d 631, 635 (N.D.1983). *See* N.D. Const. art. I, § 4 ("In all civil and criminal trials for libel the truth may be given in evidence, and shall be a sufficient defense

when the matter is published with good motives and for justifiable ends").

[¶ 12] Bertsch argues the trial court erred in deciding statements in Duemeland's November 28, 1997, letter were true, because Bertsch does not have a reputation for not closing. The affidavits of two Bismarck realtors, Darcy Fettig and Kathy Feist, state Bertsch has "been capable of substantial development. projects" and "any statements that Lee Bertsch has a reputation of 'not closing' because of financial limitations are false as Mr. Bertsch and Bertsch Construction, Inc., have no such reputation." Viewing the evidence in the light most favorable to Bertsch, those affidavits raise disputed issues of material fact regarding the truth of Duemeland's statements about Bertsch's reputation for not closing. We conclude the trial court erred in granting summary judgment on Bertsch's defamation claim on this basis.

[¶ 13] Duemeland nevertheless argues the trial court's decision is affirmable because the truth of his statements is irrelevant. *See Hummel v. Mid Dakota Clinic, P.C.*, 526 N.W.2d 704, 709 (N.D.1995) (this Court will not reverse trial court's incorrect reason for decision if result is same under correct law and reasoning); *Livingood v. Meece*, 477 N.W.2d 183, 188 (N.D. 1991) (appellee entitled on appeal to attempt to save judgment by urging any ground asserted in trial court). Duemeland argues Nelson was the only recipient of the communication, and he did not understand it to be defamatory. Duemeland argues Bertsch's defamation claim fails under *Gowin v. Hazen Mem. Hos. Ass'n*, 311 N.W.2d 554, 557 (N.D.1981), and *Little v. Spaeth*, 394 N.W.2d 700, 706 (N.D.1986), in which this Court said there is no claim for defamation unless the recipient of the communication believes it to be defamatory.

[¶ 14] Duemeland's argument requires analysis of the functions of the court and the trier of fact in determining whether a communication is defamatory. In *Moritz*, 315 N.W.2d at 460, this Court quoted with approval Restatement (Second) of Torts § 614 (1977) regarding those functions:

"(1) The court determines

"(a) whether a communication is capable of bearing a particular meaning, and

"(b) whether that meaning is defamatory.

"(2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient."

Comment (b) to § 614 explains:

"Under the rule stated in this Section, the determination of the first two of these questions is for the court and that of the third for the jury. The court determines whether the communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed is defamatory in character. If the court decides against the plaintiff upon either of these questions, there is no further question for the jury to determine and the case is ended."

[¶ 15] In *Moritz*, 315 N.W.2d at 459–62, this Court concluded a clinic's letter to a patient was not capable of bearing a defamatory meaning. The clinic's letter to the patient stated the clinic's physicians were withdrawing from further treatment of the patient for a reason that "should be obvious to you. The physicians are extremely uncomfortable treating you and do not find that they can do so in the physician-patient relationship that they would want to offer. Your past actions have made it difficult for them to accept you as a patient." *Id.* at 459. This Court construed the entire letter according to the

natural and ordinary meaning of the words and concluded the letter could not be given a defamatory meaning. *Id.* at 461–62.

[¶ 16] In *Vanover v. Kansas City Life Ins. Co.*, 438 N.W.2d 524, 526–27 (N.D. 1989), this Court discussed whether a letter stating an insurance agent was terminated for cause could be construed as defamatory and reversed a summary judgment for the defendants. This Court said:

> There is no question that summary judgment is not warranted if the letter is capable of two meanings-one defamatory and the other innocent. *McCue v. Equity Coop. Pub. Co. of Fargo*, [39 N.D. 190, 167 N.W. 225 (1918) ]. Supra.

> If an innuendo is involved, the question of whether the alleged defamation is fairly warranted by the writing is one of law for the court to decide. Upon finding a reasonable possibility that the ascribed libelous meaning can be given to the material alleged to be defamatory, it is for the jury to determine if the libelous meaning was intended or conveyed. *Ellsworth v. Martindale–Hubbell Law Dictionary [Directory]*, 69 N.D. 610, 289 N.W. 101 (1940).

> Thus, on remand, the trial court must determine if the statements that Vanover was "terminated for cause" are reasonably susceptible of a defamatory construction.

*Vanover*, at 527 (quoting *Moritz*, 315 N.W.2d at 460).

[¶ 17] In determining whether a communication is capable of bearing a particular meaning and whether that meaning is defamatory, Restatement (Second) of Torts § 559 (1977) defines a defamatory communication as a communication that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *See also* N.D.C.C. §§ 14–02–03 and 14–02–04. Comment (e) to Section 559 explains a communication need not tend to harm a person in the eyes of everyone in the community; it is enough if the communication harms the person in the eyes of a substantial and respectable minority, and the fact a particular recipient does not regard the communication as discreditable is not controlling if the communication is obviously defamatory in the eyes of the community.

[¶ 18] In determining whether a recipient understands a communication to be defamatory, Restatement (Second) of Torts § 563 (1977) explains the "meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." Comment (a) to Section 563 states the meaning of the matter communicated is decided by Section 563, and whether the meaning so ascertained is defamatory is determined by the rule stated in Section 559. Comment (c) of Section 563 further states the question to be decided is whether the communication is reasonably understood in a defamatory sense by the recipient.

[¶ 19] Here, Duemeland's November 28, 1997, letter to Nelson said Bertsch "has the reputation of not closing, unless he gets assisted Funds. This is a large project for him, and would not unless you were to proceed, be able to pull this project off. There would always be the possibility that he may have financial backing." Bertsch argues Duemeland's communication suggests Bertsch was experiencing financial problems and was unable to fulfill proposed real estate projects. Duemeland's communication about Bertsch's business capabilities could be construed as injuring Bertsch in his occupation by im-

puting to him general disqualifications in his occupation. *See* N.D.C.C. §§ 14–02–03 and 14–02–04. *See also* Restatement (Second) of Torts § 559 (1977). *See generally* Prosser and Keeton on Torts, p. 790–91 (5th Ed.1984) (the law has always been very tender of the reputation of tradesmen, and words spoken of them in the way of their trade will bear an action that will not be actionable in the case of another person). We conclude Duemeland's communication is susceptible to a meaning that is defamatory, and it is ordinarily a question for the trier of fact to determine whether the recipient, Nelson, understood it in that light. *See* Restatement (Second) of Torts § 614 (1977).

[¶ 20] Duemeland argues his communication to Nelson reinforced Nelson's opinion about Bertsch from negotiations Nelson had with Bertsch regarding Hollywood Entertainment's location of a Hollywood Video store in Minot, and Nelson did not understand the communication to be defamatory.

[¶ 21] Although Nelson had experience with Bertsch regarding Bertsch's failure to secure financing for a Hollywood Video store in Minot, Nelson testified in his deposition that Duemeland's statements about Bertsch's reputation for not closing were "not favorable." According to Bertsch, all further negotiations with Nelson ceased after Duemeland's communication to Nelson. There is also evidence that when Hollywood Entertainment was again looking for a Bismarck location for a store in 1999, Nelson expressed concerns about Bertsch's financial abilities to Jay Spooner, a Duemeland Realty employee. In *Vanover v. Kansas City Life Ins. Co.,* 553 N.W.2d 192, 197 (N.D.1996), this Court held proof of special damages was not required to recover in an action for libel per quod, which requires reference to extrinsic evidence to establish a defamatory

meaning, because a person's reputation is a major factor in a satisfactory existence and one function of a libel action is to provide public vindication of a decent person's good name. Viewing the evidence in the light most favorable to Bertsch, we believe it supports an inference that Nelson understood Duemeland's statements in a defamatory sense and those statements disparaged Bertsch's business reputation in Nelson's eyes. We conclude the trial court erred in granting summary judgment on Bertsch's defamation claim.

B

[¶ 22] Bertsch argues the trial court erred in granting summary judgment on his claim for tortious interference with a business relationship.

[¶ 23] We recently outlined the elements for a claim for tortious interference with a business relationship in *Trade 'N Post v. World Duty Free Americas,* 2001 ND 116, ¶ 36, 628 N.W.2d 707 as: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted.

[¶ 24] In *Schneider v. Schaaf,* 1999 ND 235, ¶ 26, 603 N.W.2d 869, we explained actual damages were an essential element of interference with a business relationship, and it was not enough for plaintiffs to show a possibility they would have obtained some economic benefit in the absence of a defendant's interference. Rather, plaintiffs are held to a stringent standard, and they must show they would have obtained the economic benefit in the absence of the interference. *Id.*

[¶ 25] Here, the trial court decided Bertsch presented no evidence he was damaged by Duemeland's alleged interference. The court said "Nelson testified that nothing [Duemeland] did had any impact on Hollywood Entertainment Corporation's decision not to contract with [Bertsch]. All the evidence shows that the Christopher Building site did not pass Hollywood Entertainment Corporation's supply and demand criteria and that Hollywood Entertainment Corporation never performed a site pack analysis on the Christopher Building site."

[¶ 26] Bertsch argues there are genuine issues of material fact about whether Duemeland's alleged interference caused actual damages. Bertsch argues the circumstantial evidence would allow a jury to infer Nelson's attitude regarding a potential business deal with Bertsch was soured by Duemeland's actions.

[¶ 27] Although Hollywood Entertainment did not enter a final lease agreement with Bertsch, Nelson testified in his deposition a lease arrangement was not consummated because the Christopher Building did not pass Hollywood Entertainment's supply and demand criteria and therefore Hollywood Entertainment never conducted a site pack review. Bertsch did not present any evidence, by affidavit or otherwise, from any other representative of Hollywood Entertainment to refute Nelson's testimony the Christopher Building failed Hollywood Entertainment's supply and demand criteria. Bertsch was required to establish the existence of a factual dispute regarding whether he would have obtained an economic benefit in the absence of Duemeland's actions. *See Schneider,* 1999 ND 235, ¶ 26, 603 N.W.2d 869. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of their claim and on which they will bear the burden of proof at trial. *Black,* 1999 ND 236, ¶ 23, 603 N.W.2d 182. Bertsch failed to present evidence to establish the existence of a factual dispute about whether Duemeland's conduct caused Bertsch actual damage, and we conclude summary judgment was appropriate on this claim.

C

[¶ 28] Bertsch argues the trial court erred in granting summary judgment on his claim for misappropriation of trade secrets. In granting summary judgment on this claim, the trial court decided Bertsch made no showing Duemeland requested, and another person gave him, Bertsch's trade secrets.

[¶ 29] Chapter 47–25.1, N.D.C.C., outlines the statutory requirements for a claim for misappropriation of trade secrets. Under N.D.C.C. § 47–25.1–03, a complainant is entitled to recover damages for misappropriation of a trade secret. Section 47–25.1–01(4), N.D.C.C., defines a "trade secret" as

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Section 47–25.1–01(2), N.D.C.C., defines "misappropriation" as

a. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret

was acquired by improper means; or

b. Disclosure or use of a trade secret of another without express or implied consent by a person who:

(1) Used improper means to acquire knowledge of the trade secret;

(2) At the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

(a) Derived from or through a person who had utilized improper means to acquire it;

(b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(3) Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Section 47–25.1–01(1), N.D.C.C., defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."

■ [¶ 30] Bertsch argues the pricing information in the "letter of intent" that Nelson transmitted to Duemeland is a "trade secret" and Duemeland's actions constituted a "misappropriation" of that information as defined in N.D.C.C. § 47–25.1–01. Bertsch argues Duemeland requested the release of confidential information regarding Bertsch's pricing strategy with Hollywood Entertainment, and Bertsch argues there are disputed issues

of fact about whether Duemeland's actions constituted the inducement of a breach of duty to maintain secrecy under the definition of "misappropriation" in N.D.C.C. § 47–25.1–01(2). Bertsch argues a jury could reasonably conclude, in the entire context of this case, Duemeland received the information through improper means, because

"from the start [Duemeland] made false and disparaging comments regarding Bertsch's abilities as a developer and his ability to close this transaction. At the same time [Duemeland] offered himself as a substitute source for a potential location and potential investors for the location of a Hollywood Video store. Against this background, a jury could reasonably infer that Duemeland has insinuated himself into the transaction between Bertsch and Hollywood Video to a sufficient extent that his exposure to confidential information as between Bertsch and Hollywood Video would be a foregone conclusion."

[¶ 31] According to Nelson, he sent Duemeland the letter of intent so Duemeland would know Hollywood Entertainment's requirements for a site for a Hollywood Video store. According to Duemeland, he asked Nelson for "a copy of [the] requirements and implied standard copy of the lease." Bertsch presented no evidence that Duemeland requested the letter of intent that Hollywood Entertainment provided to Bertsch. Duemeland received a copy of the letter of intent because Nelson sent Duemeland that document rather than a copy of Hollywood Entertainment's form for a letter of intent. We conclude the circumstances of Duemeland's receipt of the letter of intent from Nelson do not raise a factual dispute about whether Duemeland acquired the letter of intent by improper means under N.D.C.C. § 47–25.1–01(2)(a). Moreover,

Bertsch presented no evidence to raise a factual dispute that Duemeland "disclose[d] or use[d]" the trade secret as required for a misappropriation under N.D.C.C. § 47–25.1–01(2)(b). Bertsch failed to establish the existence of a factual dispute on an essential element of his misappropriation claim. *See Black*, 1999 ND 236, ¶ 23, 603 N.W.2d 182. We therefore conclude the trial court did not err in granting summary judgment on Bertsch's misappropriation claim.

### III

[¶ 32] Bertsch argues the trial court abused its discretion in denying his motion to compel access to some of Duemeland's computer records to locate certain alleged e-mail correspondence between Duemeland and Nelson. Bertsch was allowed discovery of information on computers owned by Duemeland as of January 1, 1998, but Bertsch was denied access to computers Duemeland acquired in August 1998 and September 2000. Bertsch argues his computer technician concluded some of the hard drives from the older computers may have been moved to the two newer computers. The trial court denied Bertsch's motion to compel discovery, concluding granting Bertsch access to computers acquired after Duemeland's alleged wrongful acts would not lead to relevant information and further searches could result in disclosure of privileged and confidential information.

[¶ 33] A trial court's discovery decision will not be reversed on appeal absent an abuse of discretion. *Matter of Estate of Schmidt*, 1997 ND 244, ¶ 7, 572 N.W.2d 430. A court abuses its discretion when its actions are arbitrary, capricious, or unreasonable. *Buchholz v. Buchholz*, 1999 ND 36, ¶ 18, 590 N.W.2d 215. On this record, we conclude the trial court did not act arbitrarily, capriciously, or unrea-

sonably in denying Bertsch's motion to compel discovery.

### IV

[¶ 34] In Duemeland's cross-appeal, he argues the trial court erred in not awarding him attorney fees. After dismissing all of Bertsch's claims, the trial court denied Duemeland's request for attorney fees, concluding Bertsch's action did not "demonstrate such a complete absence of facts or law that a reasonable person could not have thought a court would render judgment in their favor."

[¶ 35] A claim is frivolous under N.D.C.C. § 28–26–01(2) when there is a complete absence of law or fact so a reasonable person could not have expected a court would render judgment in that party's favor. *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73, 84 (N.D. 1991). Affirmance of a summary judgment on appeal does not mean a party's claims are frivolous. *Id.* at 85. An award of attorney fees under N.D.C.C. § 28–26–01(2) is within the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion. *Peterson v. Zerr*, 477 N.W.2d 230, 236 (N.D.1991).

[¶ 36] We have concluded summary judgment was improper on Bertsch's defamation claim. Bertsch's other claims were related to the same factual nexus as his defamation claim, and Duemeland has not attempted to separate attorney fees for the different claims. We conclude there is not such a complete absence of law or fact as to render Bertsch's claims frivolous, and the trial court did not abuse its discretion in denying Duemeland's request for attorney fees.

### V

[¶ 37] We affirm the trial court's denial of attorney fees and the summary

judgment dismissal of Bertsch's claims for tortious interference with a business relationship and for misappropriation of trade secrets. We reverse the summary judgment dismissal of Bertsch's defamation claim and remand for proceedings consistent with this opinion.

[¶ 38] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., and GERALD W. VANDE WALLE, C.J., concur.