Filed 5/15/08 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2008 ND 95

Roland C. Riemers, Plaintiff and Appellant

v.

Rick Mahar, Defendant and Appellee

No. 20070232

Appeal from the District Court of Walsh County, Northeast Judicial District, the Honorable Michael G. Sturdevant, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Roland C. Riemers (pro se), 108 Cairns Avenue, Emerado, N.D. 58228, plaintiff and appellant, submitted on brief.

Nicholas B. Hall, Hodny Currie Lawyers, P.O. Box 610, Grafton, N.D. 58237-

0610, for defendant and appellee, submitted on brief.

Riemers v. Mahar

No. 20070232

Crothers, Justice.

[¶1] Roland Riemers appeals from a summary judgment dismissing his defamation action against Rick Mahar.  We conclude Riemers failed to raise genuine issues of material fact about his claim, and we affirm the summary judgment.

I

[¶2] The Shared Parenting Initiative was an initiative on the state ballot in the November 2006 general election, which proposed changes to child custody and child support laws.  The Family Law Reform Initiative proposed changes to child custody, divorce, domestic violence, and child support laws, but it did not receive enough signatures to be placed on the state ballot for the November 2006 general election.  Riemers helped draft the Family Law Reform Initiative and was a proponent of both initiatives.

[¶3] Riemers sued Mahar for defamation after Mahar wrote an article published in the Walsh County Record, on September 20, 2006, criticizing the Shared Parenting Initiative and the Family Law Reform Initiative.  Mahar’s article also included statements about Riemers and his support of the initiatives:

“I have been following with considerable interest the progress of the Shared Parenting Initiative (SPI) and the Family Law Reform Initiative authored by Mitchell Sanderson and Roland Riemers respectively.  Voters may recall that Messrs. Riemers and Sanderson ran for North Dakota Governor/Lt. Governor on the Libertarian ticket in the 2004 election.  Mr. Riemers, who ran for Governor, and Mr. Sanderson, who ran for Lt. Governor, lost that one having received a paltry one percent of the votes.

. . . .

“I have spent hours and hours on the internet, reading blogs, reading newspaper articles, listening to radio talk shows, reading the initiatives, etc.  I’ve even heard Mr. Sanderson present at the Walsh County Commission meeting on two occasions.  The conclusion that I have reached is that neither Mr. Riemers nor Mr. Sanderson have any interest whatsoever in children or families.  They are self-

absorbed zealots who will stop at nothing to avenge what they perceive to be their ill-treatment by a court system who didn’t happen to see things their way.  These initiatives are about power, control, and winning at any cost.  They are not about families and children.

“The reader can learn all about Mr. Riemers motives by simply going on line, Googling “Roland Riemers Court Case” and then follow the links to the N.D. 2001 Supreme Court ruling and the 2004 N.D. (Riemers v. Peters-Riemers) Supreme Court ruling. . . . If one reads, for example, the 2004 Supreme Court decision on his appeals and then the Family Law Reform Initiative one will no longer wonder what might have inspired the Initiative.  His success at the Supreme Court was similar to his level of success in his bid for Governor.  His attitude seems to be ‘if I do something and it is against the law then the answer is simple—change the law’.  Again, this is opinion.”

Rick Mahar, 
Kissing the High Ground Goodbye
, Walsh County Record, Sept. 20, 2006.  Mahar also criticized both initiatives, argued they would hurt families and the state and said, “Perhaps the system needs to be tweaked a little.  It does not, however, need to be demolished.  These initiatives are not the answer.  They are the products of rage and vengeance and are truly the fruit of the poison tree.”  The article was submitted to the Associated Press and appeared in various other newspapers throughout the state.

[¶4] Riemers publicly supported both initiatives.  Riemers wrote an article in support of the Family Law Reform Initiative, published in the Grand Forks Herald on May 17, 2006.  He was interviewed for an article about the two initiatives, which was published in the Grand Forks Herald on July 24, 2006.  Riemers responded to Mahar’s article in a letter published in the Walsh County Record on October 4, 2006, in which he promoted the Shared Parenting Initiative and addressed Mahar’s arguments and criticism.  Riemers was also a candidate for the United States Senate in 2006 and wrote about his support for the two initiatives in an article about his candidacy, which was published in the Cavalier County Republican on October 30, 2006.

[¶5] Mahar moved for summary judgment, arguing his article does not contain defamatory statements about Riemers, the statements in the article are privileged political speech protected from defamation actions by the federal and state constitutions, and Riemers is a public figure who must show the alleged defamatory statements were made with malice.  In support of his motion, Mahar submitted an affidavit explaining his position, a copy of his article, copies of newspaper articles Riemers authored, copies of the two initiatives, answers to interrogatories from both Riemers and Mahar, and other evidence.

[¶6] Riemers opposed the motion for summary judgment.  He argued Mahar’s motion was lacking in substance, summary judgment is not appropriate in defamation cases, Mahar’s article was not privileged communication, Riemers is not a public figure, and Mahar’s statements in the article were defamatory and not merely hyperbole.  Riemers did not submit any evidence in support of his argument.

[¶7] The district court granted Mahar’s motion for summary judgment and dismissed the suit.  The court considered each statement Riemers claimed was defamatory and concluded the statements either were true or were Mahar’s opinion.  The court concluded even if Mahar’s statements could be considered false, the statements are privileged political speech, Riemers is a public figure and was required to provide evidence the defamatory statements were made with actual malice, Riemers failed to present any evidence of malice, and Mahar did not abuse the privilege extended to his statements.  The court also noted that Riemers did not present any evidence Mahar’s article caused him to experience hatred, contempt, ridicule or obloquy, that he was shunned or avoided, or that he was injured in his occupation.

II

[¶8] Riemers argues the district court erred in accepting Mahar’s motion for summary judgment because the motion was defective and “totally lacking in substance.”  Riemers contends the motion denied him a clear direction about what he needed to respond to because the motion states, “This Motion is based upon the accompanying Memorandum Brief, Affidavits, and Exhibits attached herewith, as well as the record on file.”  Riemers contends the motion failed to comply with the specificity requirements of the Rules of Civil Procedure.

[¶9] Rule 7(b)(1), N.D.R.Civ.P., states that a motion “shall be made in writing, shall state with particularity the grounds therefore, and shall set forth the relief or order sought.”  However, a motion may be valid even though it fails to meet the particularity requirement on its face, if supporting papers or briefs filed contemporaneous with the motion detail grounds with specificity.  
Schaan v. Magic City Beverage Co.
, 2000 ND 71, ¶ 15, 609 N.W.2d 82; 
Eisenbarth v. Eisenbarth
, 91 N.W.2d 186, 188 (N.D. 1958).

[¶10] While Mahar’s motion failed to meet the particularity requirement on its face, his accompanying brief detailed the grounds for the motion with specificity.  We conclude the district court did not err in accepting Mahar’s motion for summary judgment.

III

[¶11] Whether summary judgment was properly granted “is a question of law subject to de novo review.”  
Riemers v. Grand Forks Herald
, 2004 ND 192, ¶ 4, 688 N.W.2d 167.  “Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the party opposing the motion, there are no genuine issues of material fact or conflicting inferences that can reasonably be drawn from undisputed facts or if the only issues to be resolved are questions of law.”  
Id.
  We have explained the burden on the parties when there is a motion for summary judgment:

“Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings.  Nor may the opposing party rely upon unsupported, conclusory allegations.  The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court’s attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

“In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment.  The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.”

Fish v. Dockter
, 2003 ND 185, ¶ 15, 671 N.W.2d 819 (quoting 
Anderson v. Meyer Broadcasting Co.
, 2001 ND 125, ¶ 14, 630 N.W.2d 46).

[¶12] Riemers argues the district court erred in concluding that he is a public figure and that he had to prove Mahar’s statements were made with malice because Mahar’s article never identified Riemers as a political candidate or sponsor of the initiatives and because Mahar was not attacking him as a public figure, and therefore the public figure defamation standard does not apply.  He argues the court did not apply North Dakota statutory defamation laws, because North Dakota statutes do not restrict defamation suits against public figures, and if the court had correctly applied the statutory defamation provisions, Riemers met the requirements.  He claims the court erred in ruling that it was important Riemers did not present any evidence establishing any facts in dispute, because the only evidence that was necessary was Mahar’s article.  Riemers contends the district court erred in making findings of fact about the truthfulness of Mahar’s statements because it made credibility determinations and weighed evidence not appropriate in summary judgment and because whether the statements were made with malice is a question for the jury.

[¶13] “Every [person] may freely write, speak and publish his opinions on all subjects, being responsible for the abuse of that privilege.”  N.D. Const. Art. I, § 4.  However, “[e]very person, subject to the qualifications and restrictions provided by law, has the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to the person’s personal relations.”  N.D.C.C. § 14-02-01.  Under N.D.C.C. § 14-02-02, defamation includes libel or slander.  “Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes the person to be shunned or avoided, or which has a tendency to injure the person in the person’s occupation.”  N.D.C.C. § 14-02-03.  Slander is a false and unprivileged publication, other than libel, which:

“1.  Charges any person with crime, or with having been indicted, convicted, or punished for crime;

2.  Imputes to the person the present existence of an infectious, contagious, or loathsome disease;

3.  Tends directly to injure the person in respect to the person’s office, profession, trade, or business, either by imputing to the person general disqualifications in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to the person’s office, profession, trade, or business that has a natural tendency to lessen its profits;

4.  Imputes to the person impotence or want of chastity; or

5.  By natural consequence causes actual damage.”

N.D.C.C. § 14-02-04.  A publication is not defamatory unless it is false.  
Bertsch v. Duemeland
, 2002 ND 32, ¶ 11, 639 N.W.2d 455.  There is no liability for privileged communications because “‘some communications are so socially important that the full and unrestricted exchange of information requires some latitude for mistake.’”  
Riemers
, 2004 ND 192, ¶ 5, 688 N.W.2d 167 (quoting 
Fish
, 2003 ND 185, ¶ 10, 671 N.W.2d 819).  A privileged communication is a communication made:

“1. In the proper discharge of an official duty;

2. In any legislative or judicial proceeding or in any other proceeding authorized by law;

3. In a communication, without malice, to a person interested therein by one who also is interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information; and

4. By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof.”

N.D.C.C. § 14-02-05.

[¶14] Riemers is correct that there are no special restrictions on defamation actions involving public figures in the North Dakota statutory defamation provisions; however, we can not read our statutes in isolation.  The United States Supreme Court has held the First and Fourteenth Amendments of the United States Constitution limit state defamation law in several respects, including defamation actions for statements made about public figures.  
See
 
Masson v. New Yorker Magazine, Inc.
, 501 U.S. 496, 510 (1991); 
Milkovich v. Lorain Journal Co.
, 497 U.S. 1, 14-15 (1990).

[¶15] The limits on defamation actions for statements made about public figures exist because of concerns for free speech.  False statements are bound to be made in the course of vigorous public debate.  
Price v. Viking Penguin, Inc.
, 881 F.2d 1426, 1430 (8th Cir. 1989).  “‘One of the prerogatives of American citizenship is the right to criticize public men and measures.’  Such criticism, inevitably, will not always be reasoned or moderate; public figures . . . will be subject to ‘vehement, caustic, and sometimes unpleasantly sharp attacks.’”  
Hustler Magazine v. Falwell
, 485 U.S. 46, 51 (1988) (citations omitted).  While false assertions have little value, imposing liability for all false statements relating to public figures would have a chilling effect on speech about public figures, and freedoms of expression require breathing room.  
Id.
 at 52.  Without limitations on defamation actions, destructive self-censorship would occur limiting free speech.  
Price
, 881 F.2d at 1430.  Given the importance of the free and open exchange of ideas, a public figure is prohibited from recovering damages for defamatory criticism unless there is clear and convincing evidence the defamatory statement was made with actual malice.  
Gertz v. Robert Welch, Inc.
, 418 U.S. 323, 342 (1974).  Whether someone is a private or a public figure is a question of law.  
Lundell Mfg. Co. v. American Broadcasting Companies, Inc.
, 98 F.3d 351, 362 (8th Cir. 1996) (“determination of plaintiff’s status is a question of law governed by federal constitutional law”).

[¶16] Public figures include nonpublic persons who are “‘intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large.’”  
Gertz
, 418 U.S. at 337 (quoting 
Curtis Pub. Co. v. Butts
, 388 U.S. 130, 162 (1967)).  Public figures generally “enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements then private individuals normally enjoy”; therefore the state’s interest in protecting private individuals is greater because they lack effective opportunities for rebuttal and are more vulnerable to injury.  
Gertz
, at 344.  Public figures often have assumed roles of special prominence in society’s affairs.  
Id.
 at 345.  Some are public figures for all purposes because they occupy positions of such persuasive power and influence.  
Id.
  More commonly they have “thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.”  
Id.
  In either case they invite attention and comment.  
Id.
  Because they inject themselves in public controversies, “public figures have voluntarily exposed themselves to increased risk of injury [for] defamatory [statements].”  
Id.

[¶17] There are two types of public figures: an individual who has achieved such “fame or notoriety that he [is] a public figure for all purposes and in all contexts,” and an individual who “voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.”  
Gertz
, 418 U.S. at 351.  An individual should not be deemed a public figure for all purposes unless there is clear evidence of general fame or notoriety in the community and pervasive involvement in society’s affairs.  
Id.
 at 352.  To determine an individual’s public figure status we look at the nature and extent of the individual’s participation in the controversy giving rise to the alleged defamation.  
Id.

[¶18] In this case, Riemers is at least a limited purpose public figure.  While Riemers may not have sponsored either initiative, he drafted the Family Law Reform Initiative and was one of its main proponents.  He voluntarily assumed a role of special prominence in the controversy and sought to influence its outcome.  Riemers also had access to channels of effective communication.  After Mahar’s article was published, Riemers published an article rebutting Mahar’s allegations and criticism.  Riemers also wrote and published various other newspaper articles and gave interviews about the Family Law Reform Initiative and the Shared Parenting Initiative before and after Mahar’s article was published.  The controversy existed prior to Mahar’s article and continued to exist at the time the article was published.  Mahar’s article was limited to discussing the controversy and Riemers’ role in the controversy.  We conclude Riemers was, as a matter of law, a limited purpose public figure.

[¶19] Because Riemers was a public figure, he was required to present clear and convincing evidence Mahar’s statements were false and were made with actual malice.  Actual malice is knowledge that the statements are false or that the statements were made with reckless disregard for whether they were false.  
Gertz
, 418 U.S. at 334. The plaintiff must demonstrate the author had serious doubts about the truth of his publication or had “a high degree of awareness of [the] probable falsity.”  
Masson
, 501 U.S. at 510.  The standard for actual malice “should not be confused with the concept of malice as an evil intent or a motive arising from . . . ill will.”  
Id.
  There is no genuine issue and the court must grant summary judgment “if the evidence presented . . . is of insufficient caliber and quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.”  
Anderson v. Liberty Lobby, Inc.
, 477 U.S. 242, 254 (1986).  “‘The question whether the evidence in the record in a [public figure] defamation case is sufficient to support a finding of actual malice is a question of law[,]’” because in cases raising First Amendment issues, the appellate court has an obligation to examine the whole record and to ensure the judgment does not constitute a forbidden intrusion on free expression.  
Milkovich
, 497 U.S. at 17 (quoting 
Harte-Hanks Communications, Inc. v. Connaughton
, 491 U.S. 657, 685 (1989)).

[¶20] “Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of their claim and on which they will bear the burden at trial.”  
Bertsch
, 2002 ND 32, ¶ 9, 639 N.W.2d 455.  Riemers failed to present any evidence of malice and relied only on the statements in the article.  Because Riemers failed to present any evidence of malice, it is presumed such evidence does not exist.  
See
 
Riemers
, 2004 ND 192, ¶ 6, 688 N.W.2d 167.  We conclude Riemers failed to raise a genuine issue of material fact about whether the alleged defamatory statements in Mahar’s article were made with actual malice.  Therefore the district court properly granted summary judgment.

[¶21] Riemers raises several other issues; however, those issues do not affect the outcome of this case, and we will not address them.

IV

[¶22] We conclude Riemers was a limited purpose public figure and was required to present evidence raising a genuine issue of fact about actual malice.  Riemers failed to meet his burden.  We affirm the district court’s summary judgment dismissing Riemers’ defamation action against Mahar.

[¶23] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.